UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**H. ALAN BURTON,**

      **Plaintiff,**

vs.                                                         **Case No. 6:06-cv-701-Orl-19UAM**

**CITY OF ORMOND BEACH,**
**FLORIDA,**

      **Defendant.**

_____

**ORDER**

This case comes before the Court on the following:

1. Defendant's Motion for Summary Judgment, Statement of Undisputed Material Facts, and Supporting Memorandum of Law, filed by Defendant City of Ormond Beach, Florida on June 8, 2007; (Doc. No. 27);

2. Notice of Filing Exhibits In Support of Defendant's Motion for Summary Judgment, filed by Defendant on June 8, 2007; (Doc. No. 28);

3. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, filed by Plaintiff H. Alan Burton on June 21, 2007; (Doc. No. 30);

4. Notice of Filing Supplemental Authority in Support of Defendant's Motion for Summary Judgment, filed by Defendant on August 6, 2007. (Doc. No. 36).

**Background**

The following facts are not in dispute. Plaintiff H. Alan Burton was hired by Defendant City of Ormond Beach as the City's Leisure Services Director in May of 1996. (Doc. No. 1, ¶ 5; Doc. No. 9, ¶ 5). The City's organizational structure is divided so that the City's Leisure Services department and the City's Public Works department are two separate entities. Thus, the City's athletic ball fields are overseen by Leisure Services, but the City's parks are controlled by Public Works. (*E.g.*, Doc. No. 27, p. 2; Doc. No. 30, p. 2). As Leisure Services director, Plaintiff's supervisors were City Manager Isaac Turner and Assistant City Manager Theodore MacLeod. Plaintiff was in charge of supervising the City's Recreation Manager, Recreation Supervisors, and several other employees. (*E.g.*, Doc. No. 27, p. 2; Doc. No. 30, p. 2). In addition, Plaintiff's job duties involved interaction with the public. One of Plaintiff's additional duties was to be a liaison to the Recreation Advisory Board, a group of citizens appointed by the City Commission to advise Defendant on issues relating to recreation and the ball fields within Ormond Beach. (*E.g.*, Doc. No. 27, p. 3; Doc. No. 30, p. 2).

In June of 2005, City Manager Turner requested that Plaintiff provide him with a planning recommendation for creating a 40-acre park in the Ormond Crossings area of the City. On June 28, 2005, Mr. Turner emailed a written request to Plaintiff, referring to the oral request and stating that he wanted the information by July 9, 2005. (Doc. No. 28-7). Plaintiff did not feel that this request was proper and felt that it exceeded a parks and recreation "master plan" that other consultants had already prepared. (*E.g.*, Doc. No. 28-4, p. 80). Plaintiff never provided a separate planning recommendation as requested. Plaintiff

testified that his response to Mr. Turner was that Plaintiff accepted the parks and recreation master plan "as is." (*Id*).

On July 24, 2005, Stan Stockhammer, and Ormond Beach resident, wrote an email to Plaintiff and another employee of Defendant requesting that the City do something to prevent the problem of baseballs flying into underbrush near the City's Number 5 field. Specifically, Mr. Stockhammer asked the City to construct a net to prevent this from happening in the future. (*E.g*., Doc. No. 28-5, p. 4; Doc. No. 28-7, pp. 17-18). Plaintiff responded that he would be glad to include the request in the next year's fiscal budget and forward the request to the Public Works department for a work order. (*E.g*., Doc. No. 28-7, p. 17).

On July 25, 2005, John "Rick" Boehm, a member of the Recreation Advisory Board, sent an email to Plaintiff, Mr. Stockhammer, and several others which referred to the prior emails between Plaintiff and Mr. Stockhammer. In his message, Mr. Boehm criticized the City for underfunding recreation projects and neglecting its sports facilities. (E.g., Doc. No. 28-12, pp. 24-25; Doc. No. 28-13, pp. 2-3). Specifically, Mr. Boehm stated that the City repeatedly failed to consider certain projects, and as a result, the "facilities [we]ren't what they should be." (*E.g.,* Doc. No. 28-13, pp. 2-3).

Mr. Turner was "concerned about some of the comments" in Mr. Boehm's email, particularly regarding "his assumptions about the administration of the city." (Doc. No. 28-8, p. 45). On July 26, 2006, he attended a meeting with Plaintiff and Mr. MacLeod in which the parties discussed the maintenance of the ball fields. Mr. Turner also expressed his anger with Plaintiff for his failure to complete the requested recommendation on Ormond

Crossings.  (*E.g.*, Doc. No. 28-2, ¶ 8; Doc. No. 28-4, p. 90).

Also on July 26, City Commissioner Bill Partington sent an email to Isaac Turner requesting his permission to send a response to Rick Boehm's message, and Mr. Turner agreed. (*E.g*., Doc. No. 28-11, pp. 1-2). On July 27, 2005, Mr. Partington sent another email to Mr. Turner, Rick Boehm, Stan Stockhammer, Plaintiff, and the other citizens who received Boehm's email.  In it, Mr. Partington suggested that Plaintiff was responsible for the funding and maintenance issues the City was criticized for mishandling in the Boehm email. (E.g., Doc. No. 28-22, pp. 5-6).  Mr. Partington felt that Plaintiff had the authority to address Mr. Stockhammer's concerns personally and failed to do so, and instead gave a citizen "the run-a-round from staff" which did not utilize proper English.  (*E.g*., Doc. No. 28-22, p. 6).  Mr. Partington also stated that Plaintiff's response to Mr. Stockhammer caused him to "lose faith in the abilities of the current leadership in leisure services." (*Id.*)  Finally, Mr. Partington concluded that in his opinion "a strong re-organization is in order."  (*Id.*)

Later that day, Plaintiff sent a responsive email addressed to Bill Partington to Mr. Partington, Mr. Turner, Mr. Boehm, Mr. Stockhammer, and the other individuals listed on the Partington email. (*E.g*., Doc. No. 28-22, p. 1).  Plaintiffs email was five (5) pages in length and was critical of the City's organizational structure and management. (*Id.* at pp. 1-5).  Plaintiff explained throughout the email why he felt he could not handle Mr. Stockhammer's request to improve Field Number 5 by himself. (*Id.*) Among the many other topics included in the email, Plaintiff described the organizational division among Leisure Services and Public Works and stated that there is a "<u>qualitative managerial difference</u>" between the two departments.  (*Id*. at p. 1) (emphasis in original).  Plaintiff described the

-4-

City's Field Number 5 as "disgraceful and unsafe and nearly unplayable." (*Id*. at p. 2). Plaintiff continued that he shared his concerns with the City Manager but "planning for a safe and playable field did not make it on the funded list." (*Id*.) Plaintiff went on to state that the past three memos to the Commission on parks and recreation were not reviewed by the park and recreation professional and that "this exclusionary practice is systematic and unfortunate." (*Id*. at p. 3). Plaintiff also mentioned how he was passed over for several promotions. (*Id*. at p. 4).

Plaintiff's email also criticized the performance of City Manager Isaac Turner. The email suggested that Mr. Turner failed to follow up on a campaign promise to utilize staff around him and further stated that he violated the Florida State Sunshine Laws by sending email messages back and forth during a public meeting. (*Id*.) Plaintiff added that Mr. Turner failed to support Plaintiff as a team player and as Leisure Services Director and that in his opinion, this might be his only chance to speak on the subject as "opinion has been muzzled and intimidated by the current City Manager." (*Id*. at p. 4). Finally, Plaintiff stated that Mr. Turner's request to him to provide a separate recommendation on Ormond Crossings apart from the master plan eliminated public participation, betrayed other professionals, and made Plaintiff feel dishonest. (*Id*.)

Plaintiff concluded the email by stating that the requested work on Field Number 5 was being performed that day, and that he agreed that a structural re-organization of the entire park and recreation system was needed.

After receiving Plaintiff's email on July 29, Isaac Turner and Theodore MacLeod discussed its contents. Mr. Turner testified that he was concerned about Plaintiff's ongoing

refusal to provide the City with information requested of him, and Mr. MacLeod was concerned about Plaintiff's ability to manage his department and do the planning that was needed for the park system in the future. (Doc. No. 28-8, pp. 61-62; Doc. No. 28-19, pp. 41-42). After unsuccessfully attempting to contact Plaintiff, Mr. Turner instructed Mr. MacLeod to email Plaintiff that afternoon and notify him that he would be placed on paid administrative leave. (*Id.* at pp. 43-44). On Monday, August 1, 2005, Defendant terminated Plaintiff's employment. (*E.g.*, Doc. No. 1-6). Plaintiff's termination letter stated only that Plaintiff was an "at-will" employee who could be terminated at any time. (*Id.*)

Plaintiff filed the instant suit on May 19, 2006, arguing that he was terminated unlawfully for engaging in his constitutional right to exercise his freedom of speech on matters of public concern. (Doc. No. 1, p. 4). Defendant now moves for summary judgment, arguing that there is no genuine issue of material fact that Plaintiff's email was not speech by a citizen on a matter of public concern, or alternatively that the City's interest in regulating insubordinate speech outweighs Plaintiff's marginal interest in speaking. (*See generally* Doc. No. 27). Plaintiff responds that material issues of fact remain and that summary judgment is inappropriate. (*See generally* Doc. No. 30).

**Standard of Review**

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate only in circumstances where "the

evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Id.* The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether the moving party has satisfied the burden, a court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993) (citation omitted). If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then a court must not grant summary judgment. *Id.* (citation omitted).

Once a movant who does not bear the burden of proof on the pertinent claim or defense satisfies its initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact, the burden shifts to the party bearing the burden of proof on the pertinent claim or defense to come forward with specific facts showing that there is a genuine issue for trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-17 (11th Cir. 1993); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-movant must demonstrate that there is a material issue of fact that precludes summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. 242). "[T]he

nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). All justifiable inferences are to be drawn in favor of the non-movant, and the evidence presented by the non-movant is to be believed by the court. *Tipton*, 965 F.2d at 999 (quoting *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159 (1970)). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue of material fact remaining for trial. *Matsushita*, 475 U.S. at 587 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)) (internal quotation marks omitted).

**Analysis**

Summary judgment must be denied, as genuine issues of material fact remain regarding Plaintiff's contention that his termination was based on his exercise of constitutionally-protected speech. The First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern. *Garcetti v. Ceballos*, 126 S.Ct. 1951, 1957 (2006) (citations omitted). Accordingly, as a general matter, a government entity may not discipline a public employee in retaliation for protected speech. *Mitchell v. Hillsborough County*, 468 F.3d 1276, 1283 (11th Cir.2006); *Chesser v. Sparks*, 248 F.3d 1117, 1122 (11th Cir.2001).

An employee's exercise of his right to freedom of speech is not absolute, however. *E.g., Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1157 (11th Cir.2002). "The problem in any case is to arrive at a balance between the interests of the [employee] as a citizen, in

commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). Because of this governmental interest, "a governmental employer may impose certain restraints on the speech of its employees, restraints that would be unconstitutional if applied to the general public." *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 80 (2004).

The parties agree that the four-step *Pickering* and *Connick v. Myers*, 461 U.S. 138 (1983), test must be applied to claims that a public employee's First Amendment rights were violated for work-related speech. *See also City of San Diego*, 543 U.S. at 80; *Brochu*, 304 F.3d at 1157; *Cook v. Gwinnett County Sch. Dist.*, 414 F.3d 1313, 1318 (11th Cir.2005); *McKinley v. Kaplan*, 262 F.3d 1146, 1149-50 (11th Cir.2001). This test examines (1) whether the employee's speech is fairly characterized as constituting speech as a citizen on a matter of public concern; (2) whether the employee's interest in speaking outweighs the government's legitimate interest in efficient public service; (3) whether the speech played a substantial part in the government's challenged employment decision; and (4) whether the employer has shown by a preponderance of evidence that it would have made the same employment decision in the absence of the protected conduct. *E.g.*, *Battle v. Bd. of Regents*, 468 F.3d 755, 759-60 (11th Cir.2006); *Chesser*, 248 F.3d at 1122-23; *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1563-64 (11th Cir.1995)(citing *Bryson v. City of Waycross*, 888 F.2d 1562, 1565-66 (11th Cir.1989)). The first two elements of this test are "questions of law designed to determine whether the employee's speech is protected by the First Amendment." *Beckwith*, 58 F.3d at 1564. The final two elements are questions of fact

"designed to determine whether a retaliatory motive was the legal cause of the challenged employment decision." *Id*. *See also Battle*, 468 F.3d at 760.  If the plaintiff can establish the first three elements, his claim will still fail if the employer proves by a preponderance of the evidence that it would have fired him regardless of his speech. *Akins v. Fulton County, Ga.*, 420 F.3d 1293, 1303 (11th Cir.2005); *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1282 (11th Cir.2005).

Defendant raises three arguments in its summary judgment motion.  First, Defendant argues that Plaintiff was speaking as an employee and not a citizen when he sent the email to City Commissioner Partington.  Next, Defendant argues that Plaintiff's comments were not on a matter of public concern.  Finally, Defendant argues that the City's interest in regulating insubordinate speech outweighs Plaintiff's marginal interest in speaking.  The Court will address each of these arguments in turn.

### A. Matter of Public Concern

For a public employee to sustain a claim of retaliation for protected speech under the First Amendment, the employee must show by a preponderance of the evidence that the employee spoke on a matter of public concern. *E.g., Battle*, 468 F. 3d at 760.  "Whether an employee's speech addressed a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 F.3d 1276, 1283 (11th Cir. 2006).  Further, the Supreme Court has held that even a document that "touch[es] upon matters of public concern in only a most limited sense" should be considered constitutionally protected speech. *See Connick*, 461 U.S. at 154 (one question out of fourteen touching matter of public concern is adequate to invoke

constitutional protection for plaintiff's questionnaire). Whether speech regards a matter of public concern is a question of law for the judge to determine. *E.g, Beckwith*, 58 F.3d at 1564.

Summary Judgment in favor of Defendant is not warranted on this issue, as case law clearly demonstrates that Plaintiff's speech addressed a matter of public concern. In the instant case, Plaintiff's email criticized Ormond Beach government officials, the mismanagement of ball fields by the City, and suggested that the City Manager had "muzzled" staff opinion and violated the state Sunshine laws. All of these types of statements have previously been held by courts to address matters of public concern. *See, e.g., Lindsey v. City of Orrick, Mo.*, --- F.3d ---, 2007 WL 1814943, at *4 (8th Cir. Jun. 26, 2007) (stating that government officials violated state sunshine law matter of public concern); *see also Dishnow v. Sch. Dist. of Rib Lake*, 77 F.3d 194, 197 (7th Cir. 1996) (same); *Belk v. City of Eldon*, 228 F. 3d 872, 882 (8th Cir. 2000) (criticism of public employee in his capacity of public official matter of public concern); *Barker v. City of Del City*, 215 F.3d 1134, 1139 (10th Cir. 2000) (defendant conceded allegation of violating open meeting laws was matter of public concern); *Casey v. City of Cabool*, 12 F.3d 799, 802 (8th Cir. 1993) (criticism of government officials and policy matter of public concern).

Moreover, the fact that Plaintiff's email contains personal matters, such as his complaints about being passed over for promotions and increased responsibilities do not destroy the nature of the speech. "It is immaterial whether [the employee] experienced some personal gratification from writing the memo; his First Amendment rights do not depend on his job satisfaction." *Garcetti,* 126 S.Ct. at 1960. In fact, even speech which contains

-11-

personal attacks on someone or private matters can address a matter of public concern if there is sufficient content touching a matter of public concern mixed in with the attack. *See, e.g., Kurtz v. Vickrey*, 855 F.2d 723, 728-30 (11th Cir. 1988).[1] For these reasons, the Court finds that Plaintiff's speech addressed a matter of public concern, and thus that summary judgment in favor of Defendant is not warranted on this issue.

### B. Speaking as a Citizen

In order to prevail Plaintiff must also demonstrate that he spoke as a citizen on a matter of public concern. If the employee made the statement at issue pursuant to his official duties, the First Amendment does not insulate his communication from discipline by the employer based upon the employer's reaction to the speech." *Garcetti,* 126 S.Ct. at 1958; *D'Angelo v. Sch. Bd. of Polk County, Fla*., 2007 WL 2189099, at *6 (11th Cir. Aug. 1, 2007). Whether the employee's speech concerned the subject matter of his employment is not controlling; the controlling factor is whether the expressions were made pursuant to the speaker's job duties. *Id.* at 1959-60. Defendant contends that there is no genuine issue of material fact that Plaintiff was speaking in his official capacity when he sent the communication in question. However, the Court finds that issues of fact exist which preclude summary judgment.

The email in question was not sent to Commissioner Partington and City Manager Turner because they asked Plaintiff to respond. The message was created by Plaintiff on his

---

[1] The Court also notes that speech in the "whistleblowing" context weighs in favor of characterizing such speech as involving a matter of public concern. *E.g., Garcetti*, 126 S.Ct. at 1962; *Pattee v. Georgia Ports Auth.*, 477 F.Supp.2d 1253, 1262 (S.D. Ga. 2006).

own volition in response to an email from Mr. Partington to Mr. Turner in which Plaintiff was merely copied. The email was sent to members of the public as well as government officials. In fact, Mr. Turner testified that there was no requirement that Plaintiff send the July 29 email, although he also testified that there was also no prohibition against him sending such email. (*E.g.*, Doc. No. 28-9, p. 45).

Furthermore, the content of the email creates additional issues of fact as to whether Plaintiff spoke as a citizen or as an employee. There is no evidence in the record that Plaintiff's job duties included notifying his superiors regarding their Sunshine law compliance. In the case of *Lindsey v. City of Orrick, Missouri*,[2] the United States Court of Appeals for the Eighth Circuit held that where an employee whose job duties included attending city council meetings to report on park, water, sewer, and street maintenance deviated from his report to lecture the City that it was violating state Sunshine law requirements, and there was no evidence that his job duties included checking for sunshine law compliance, the employee was speaking as a citizen and not as part of his official duties. *Lindsey*, 2007 WL at 1814943 at *3.

For these reasons, the Court finds that there are factual issues about whether Plaintiff's email was sent in his capacity as an employee or as a citizen. The concerns addressed in Plaintiff's email appear to have gone beyond the core functions of Plaintiff's employment. As the Court must resolve any doubt in favor of Plaintiff for purposes of summary judgment, the Court is unable to conclude that Plaintiff's complaints were made simply as an employee rather than as a citizen. *See, e.g., Kodrea v. City of Kokomo, Ind.*,

---

[2] --- F.3d --- , 2007 WL 1814943 (8th Cir. Jun. 26, 2007).

458 F. Supp.2d 857, 868 (S.D. Ind. 2006) (issue of fact as to whether report to supervisor by employee in city parks department regarding misuse of funds and time sheets was "core function" of his job); *Barclay v. Michalsky*, 451 F.Supp.2d 386, 395-96 (D. Conn. 2006) (issue of fact as to whether nurse's complaints regarding excessive force and sleeping on duty were part of the discharge of her job duties). Therefore, from the record before the Court, Defendants are not entitled to summary judgment on the question of whether Plaintiff acted pursuant to his official duties in sending the email in question.[3]

### C. The *Pickering* Balancing Test

Defendant moves for summary judgment by arguing that the City's interest in regulating Plaintiff's unprofessional and insubordinate speech outweighs Plaintiff's marginal interest in speaking as a matter of law. This argument is not well taken.

While the First Amendment protects the rights of public employees "as citizens to comment on matters of public interest" in connection with the operation of the government agencies for which they work. the Supreme Court has recognized, however, that the government has legitimate interests in regulating the speech of its employees that differ significantly from its interests in regulating the speech of people generally. *Pickering*, 391 U.S. at 568. Therefore, the Supreme Court has held that the scope of public employees' First Amendment rights must be determined by balancing "the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an

---

[3] *Garcetti* does not preclude Plaintiff from presenting his claim that he was speaking as a citizen to a jury for consideration. *See, e.g., Kodrea*, 458 F. Supp.2d at 868.

employer, in promoting the efficiency of the public services it performs through its employees. *Id.*

The United States Court of Appeals for the Eleventh Circuit considers three factors in striking this balance: 1) whether the speech at issue impedes the government's ability to perform its duties efficiently; 2) the manner, time, and place of the speech; and 3) the context within which the speech was made. *Bryson*, 888 F.2d at 1567. The Eleventh Circuit has further articulated this standard in stating that "[t]he First Amendment does not require a public employer to tolerate an embarrassing, vulgar, vituperative, *ad hominem* attack," even if such an attack touches on a matter of public concern. *Morris v. Crow*, 117 F.3d 449, 458 (11th Cir.1997). If the manner and content of an employee's speech is "disrespectful, demeaning, rude, and insulting," and is perceived that way in the workplace, the government employer is within its discretion to take disciplinary action. *Id.*; *see also Morales v. Stierheim*, 848 F.2d 1145, 1150 (11th Cir. 1988) (reasoning that an employee's "poor choice of words" could constitute a "disruption" to the county and impede its community development process). However, the law is equally clear that a public employee does not relinquish his First Amendment rights to comment on matters of public interest merely by virtue of government employment. *Connick*, 461 U.S. at 140.

Summary judgment on this issue must be denied, as the Court cannot conclude that under the record currently before it that the *Pickering* balancing test tips in Defendant's favor as a matter of law. First, the "whistleblowing" aspects of Plaintiff's speech are entitled to significant weight in Plaintiff's favor in the *Pickering* balance. *See Beckwith*, 58 F.3d at 1564; *Pattee*, 477 F.Supp.2d at 1264. In fact, one court has even found that a plaintiff's

whistleblowing causes "the scales inevitably [to] tip in his favor." *Pattee*, 477 F.Supp.2d at 1264 (internal quotation marks omitted). The Eleventh Circuit has stated that one aspect of the speech at issue, such as whistleblowing, could be determinative of the balancing test. *Stanley v. City of Dalton, Ga.*, 219 F.3d 1280, 1289-90 (11th Cir. 2000) (citing *Cooper v. Smith*, 89 F. 3d 761, 765 (11th Cir. 1996)). Furthermore, the existence of the additional issues of fact discussed above makes the grant of summary judgment in favor of Defendant inappropriate based on the current record. *See, e.g., Davis v. Phenix City, Ala.*, 2007 WL 1857263, at *10 (M.D. Ala. Jun. 27, 2007) (issue of fact created by the conflict between deposition answers and affidavit precluded summary judgment in favor of any party on issue of *Pickering* balancing). Viewing the facts of the instant case in the light most favorable to Plaintiff, summary judgment on this issue must be denied.

### D. Additional Claims

Finally, Defendant argues in a footnote that it is nevertheless entitled to summary judgment, as the facts demonstrate as a matter of law that the City would have terminated Plaintiff in the absence of protected conduct. This argument is without merit. As the Court has determined that, viewed in the light most favorable to Plaintiff, the employee's interests in speech could outweigh the interests of Defendant under *Pickering*, the causation issues regarding Plaintiff's termination must be resolved by a jury. *Kurtz*, 855 F.2d at 734; *Davis*, 2007 WL 1857263 at *10.

### Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment, (Doc. No. 27), is **DENIED**. The parties shall have ten (10) days from the date of this Order to submit

proposed jury instructions and verdict forms in accordance with the Court's prior Order. (*See* Doc. No. 32).

**DONE and ORDERED** in Chambers in Orlando, Florida this 23rd day of August, 2007.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record